**In re H.P. TOOL MANUFACTURING CORP., Debtor.**

**Fred ZIMMERMAN, Trustee, Plaintiff,**

**v.**

**BASS & SONS, INC., Defendant.**

**Bankruptcy No. 80–00657G.**
**Adv. No. 82–2622G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 16, 1984.

Marguerite J. Ayres, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for plaintiff, Fred Zimmerman, trustee.

Benjamin F. Levy, Segal, Wolf, Berk & Gaines, Philadelphia, Pa., for defendant, Bass & Sons, Inc.

Fred Zimmerman, Pennsauken, N.J., trustee.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge:

The issue before us is whether we should grant the trustee's complaint against the defendant to collect accounts receivable for goods delivered. Assuming, *arguendo,* that the defendant accepted the goods in question, we find that the defendant effectively revoked its acceptance of the goods in question based on their nonconformity with the type of goods ordered by the defendant. Accordingly, we will deny the trustee's complaint.

The facts of the instant case are as follows:[1] On April 30, 1980, H.P. Tool Manufacturing Corporation ("the debtor"), an entity engaged in the manufacture and sale of certain tools, parts and accessories, filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code"). Prior thereto, between October 10, 1979, and November 21, 1979, Bass and Sons, Inc. ("Bass"), a retailer/wholesaler of hardware supplies in California and a long-standing customer of the debtor, received several shipments of wrench kits ("the goods") from the debtor. Upon receiving the goods, Bass, without opening the cartons containing the goods and inspecting same, placed the goods in inventory and shipped some of the goods to its customers in the unopened cartons. In December of 1979, Bass began to receive complaints from its customers regarding the quality of goods in question. Consequently, Bass informed the debtor of the problem via its local representative in California. Nevertheless, in March of 1980, Bass received a notice for payment for the subject goods from a bank which was collecting the debtor's accounts receivable. Bass notified the bank of the defective nature of the goods and supplied the bank with samples of the non-conforming goods. Finally, on October 12, 1982, the trustee for the debtor filed a "complaint to collect accounts receivable" against Bass for the goods in question in the amount of $3,035.15. A hearing on said complaint was subsequently held.

Under the Uniform Commercial Code ("the U.C.C."), a buyer may reject goods if "the goods or the tender of delivery fail in any respect to conform to the contract..." 13 Pa.Cons.Stat.Ann. § 2601 (Purdon Pamphlet 1983). However, the buyer must reject the goods in accordance with section 2602 of the U.C.C., which, in pertinent part, provides:

> (a) Time and notice of rejection.—Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

13 Pa.Cons.Stat.Ann. § 2602 (Purdon Pamphlet 1983).[2]

The trustee contends that Bass failed to rightfully reject the goods received from the debtor because Bass did not inspect the goods within a reasonable time after their delivery. Therefore, the trustee argues that Bass's failure to make an effective rejection (after having had a reasonable

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

2. The terms "reasonable time" and "seasonably" are defined by the U.C.C. as follows:

     \*    \*    \*    \*    \*    \*

    (b) Reasonable time.—What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action.

    (c) Definition of "seasonably".—An action is taken "seasonably" when it is taken at or within the time agreed or if no time is agreed at or within a reasonable time.

13 Pa.Cons.Stat.Ann. § 1204 (Purdon Pamphlet 1983).

opportunity to inspect the goods) constitutes an acceptance of the goods within the parameters of the U.C.C. We disagree. The trustee, relying on the case of *Comfort Springs Corp. v. Allancraft Furniture Shop, Inc.,* 165 Pa.Super 303, 67 A.2d 818 (1949), maintains that Bass failed to exercise "due diligence" in inspecting the goods in question. In *Comfort Springs,* the Superior Court of Pennsylvania held that because the defects which the buyer complained of were readily ascertainable upon inspection and, since no such inspection was made by the buyer for a period of more than thirty (30) days after delivery, the buyer's subsequent notification of recission was ineffective and, consequently, the buyer's delay in notifying the seller of the defects was deemed to constitute an acceptance of the goods by the buyer. However, the *Comfort Springs* case is clearly distinguishable from the case *sub judice.* Bass's president testified that when the subject goods were delivered to his company, they were either put in inventory or shipped out to waiting customers.[3] He further testified that he did not instruct his employees to open up the cartons containing the goods and examine them and that this was the company's normal policy.[4] However, the goods at issue in *Comfort Springs* were sofa beds which arrived uncrated and which were bound together with bands or straps. In the instant case, the defect complained of is that the wrenches delivered to Bass, which were unpolished, did not conform to the type ordered which had a highly polished finish with the "Blue Line" label inscribed thereon.[5] It appears from the record that the only way that Bass could have discovered

the non-conformity was to have opened each carton and then unfold the wrench kits which were individually rolled up in a vinyl-like pouch.[6] Therefore, we reject the trustee's contention that the non-conformity should have been discovered immediately upon receipt of the goods. Rather, we find that Bass's "acceptance" of the goods was reasonably induced because of the difficulty of discovering the non-conformity.

The trustee next asserts that the shipment by Bass to its customers constituted an act of dominion by Bass over the goods which prevents recission of the contract and cites the case of *Marbelite Co. v. City of Philadelphia,* 40 Pa.D. & C.2d 347 (C.P.Phila.1966), *aff'd per curiam* 208 Pa.Super. 256, 222 A.2d 443 (1966) in support thereof. We find this contention to be meritless. *Marbelite* is plainly inapposite to the case at bench. In that case, the plaintiff-manufacturer sued the City of Philadelphia to recover the purchase price of various traffic signals and signal equipment which the city has used without complaint for a long period of time but for which it had never paid. When the plaintiff-manufacturer sued the city, the city claimed that it had not accepted the equipment because, *inter alia,* improprieties had taken place in the bidding process by which the plaintiff-manufacturer had obtained the contract and because the equipment failed to meet certain specifications. The trial court held that the city's use of the equipment was patently inconsistent with the seller's ownership and that said use constituted acceptance under section 2606 of the U.C.C.[7] The trial court, however, found it dispositive that the city

3. *See* notes of testimony, 3/1/83 at 30.

4. *Id.*

5. *See* Exhibits D–7 and D–8.

6. *Id.*

7. Section 2606 of the U.C.C. provides:
(a) General Rule.—Acceptance of goods occurs when the buyer:
(1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity;

(2) fails to make an effective rejection (section 2602(a)), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
(3) does any act inconsistent with the ownership of the seller; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.
(b) Part of commercial unit.—Acceptance of a part of any commercial unit is acceptance of that entire unit.
13 Pa.Cons.Stat.Ann. § 2606 (Purdon Pamphlet 1983).

had never sought to rescind the contract, never offered to return the traffic equipment and never sued for money damages.

In the instant case, however, Bass's president testified that he first became aware that there was a problem with the goods when his customers began returning the goods to Bass in the middle of December, 1979.[8] He further testified when the goods started to be returned, he called the debtor's salesman and informed him of the problem.[9] Consequently, we find no similarity whatsoever between *Marbelite* and the case *sub judice.*

Consequently, even if we assume, *arguendo,* that Bass did technically accept the goods, we are convinced that it effectively revoked said acceptance by informing the debtor's salesman of the non-conformity after the return of the goods to Bass by its customers.[10] Therefore, we will deny the trustee's complaint.

### ORDER

AND NOW, to wit, this 16th day of March, 1984, it is

ORDERED that the complaint of Fred Zimmerman, trustee for H.P. Tool Manufacturing Corporation, the debtor herein, against Bass & Son, Inc. ("Bass") to collect accounts receivable be, and the same hereby is, DENIED; and it is further

ORDERED that Bass forthwith return any of the goods in question which it still has in its possession to the trustee.

8. See notes of testimony, 3/1/83 at 30.

9. *Id.*

10. Section 2608 of the U.C.C. provides:
   (a) Grounds for revocation.—The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
   (1) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
   (2) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the assurances of the seller.

(b) Time and notice of revocation.—Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
   (c) Rights and duties of revoking buyer.—A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.
13 Pa.Cons.Stat.Ann. § 2608 (Purdon Pamphlet 1983).